IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

BETH HOLCOMBE,                           :
                                         :
          Plaintiff,                     :
                                         :          Civil Action File No.
v.                                       :
                                         :          _____
UPTAIN GROUP, INC.,                      :
an Alabama Corporation,                  :
                                         :
          Defendant.                     :
_____     :

## COMPLAINT FOR DAMAGES

### INTRODUCTION

1.    This is an action for damages against the defendant for violations of the Fair

      Debt Collection Practices Act [FDCPA], 15 U.S.C. § 1692 *et seq.*,

      Telephone Consumer Protection Act [TCPA], 47 U.S.C. § 227, and the

      regulations issued thereunder, 47 C.F.R. § 64.1200.


### <u>JURISDICTION AND VENUE</u>

2.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1337, 15 U.S.C.

      § 1692k and 47 U.S.C. § 227(b)(3).

3.    This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear Plaintiff's state law claims as they are so related to Plaintiff's TCPA claim that they form part of the same case or controversy.

4.    Venue in this District is proper because the Plaintiff resides here and the Defendants transact business here.

## PARTIES AND PERSONAL JURISDICTION

5.    Plaintiff is a resident of Glynn County, Georgia and is authorized by law to bring this action.

6.    Defendant UPTAIN GROUP, INC. is a corporation incorporated under the laws of the state of Alabama [hereinafter referred to as "UPTAIN"].

7.    UPTAIN transacts business within Glynn County, Georgia.

8.    UPTAIN's transactions in Glynn County give rise to Plaintiff's causes of action.

9.    UPTAIN is in the business of collecting past due debts allegedly owed for medical services throughout the United States, including the State of Georgia.

10.   In the course of its business, UPTAIN directed telephone calls to Plaintiff's cellular telephone number in Glynn County, Georgia.

11.   The telephone calls to Plaintiff's cellular telephone number give rise to

Plaintiff's claims.

12. UPTAIN is subject to the jurisdiction and venue of this Court.

13. UPTAIN may be served by personal service upon its registered agent Joseph

W. Uptain at its registered office located at: 7037 Old Madison Pike, Suite

450, Huntsville, Alabama 35806.

## FACTS COMMON TO ALL CAUSES

14. UPTAIN uses telephone communications in its business.

15. The principle purpose of UPTAIN's business is the collection of debts.

16. UPTAIN regularly collects or attempts to collect debts owed or due, or

asserted to be owed or due, another.

17. UPTAIN is a member of ACA International, a third party debt collection

trade association, and refers to itself as "a fully licensed bad debt collection

agency exclusively serving hospitals and physician practices."

18. UPTAIN is a debt collector subject to the provision of the Fair Debt

Collection Practices Act.

19. UPTAIN has engaged in a collection campaign directed at Plaintiff in Glynn

County, Georgia in an attempt to collect an allegedly unpaid balance for

services allegedly owed to West Florida Medical Center Clinic, P.A.

("WFMC") [hereinafter said alleged obligation of Plaintiff to WFMC is

referred to as the "Alleged Debt"].

20. Legal Collection Services, LLC (hereinafter "LCS") is a wholly owned subsidiary of WFMC.

21. In the course of attempting to collect the Alleged Debt from Plaintiff, Defendant violated the FDCPA.

22. On or about June 07, 2011, Plaintiff, by and through counsel, filed a civil action, *Holcombe v. Legal Collection Services, LLC*, 2:11-cv-00094 (S.D.G.A. 2011) [hereinafter referred to as the "Prior Action"].

23. On or about July 6, 2011, LCS filed an answer in the Prior Action.

24. UPTAIN's collection activities giving rise to this COMPLAINT were an attempt to collect the same Alleged Debt from which the Prior Action arose.

25. By virtue of the prior action, WFMC and LCS were on notice that Plaintiff was represented by counsel with respect to the Alleged Debt.

26. UPTAIN, as a purported assignee or agent of WFMC, knew or should have known that Plaintiff was represented by counsel with respect to the Alleged Debt.

27. UPTAIN had the ability to readily and easily ascertain Plaintiff's attorneys' name and address from both WFMC and the publicly accessible pleadings and case filings in the Prior Action.

28. Despite the foregoing, UPTAIN initiated communications directly with

4

Plaintiff.

29. UPTAIN never attempted to communicate with Plaintiff's counsel prior to communicating with Plaintiff.

30. Plaintiff is a subscriber of cellular telephone services for telephone number (229) 444-3105.

31. UPTAIN initiated telephone calls to telephone number (229) 444-3105.

32. On or about December 31, 2014, UPTAIN called Plaintiff's cellular telephone number using an automatic dialing system and played a prerecorded message with an artificial voice interjecting into the prerecorded script to state Plaintiff's name.

33. After plaintiff listened to the prerecorded message, a live UPTAIN representative came on the line whereby Plaintiff informed the representative that the number dialed was a cellular telephone number and instructed the representative that UPTAIN was not to initiate any further calls to said number.

34. Plaintiff carries her cellular telephone on her person at most times for personal use.

35. It is inconvenient for Plaintiff to receive collection calls on her cellular telephone.

36. As of the December 31, 2014 telephone call, UPTAIN knew or should have

known it was inconvenient for Plaintiff to receive collection calls on her cellular telephone.

37. On or about January 12, 2015, UPTAIN initiated another similar call to Plaintiff's cellular telephone, and Plaintiff once again informed the representative who came on the line that the number dialed was a cellular telephone number and instructed the representative that UPTAIN was not to initiate any further calls to said number.

38. Despite multiple requests not to call and knowledge that it did not have consent to call Plaintiff's cellular telephone number, UPTAIN continued calling Plaintiff's cellular telephone number for several months.

39. In many of the calls, UPTAIN used an identical prerecorded voice recording which interjected a different artificial voice into the prerecorded script to state Plaintiff's name.

40. In all of the telephone calls, UPTAIN used a predictive dialer to initiate the telephone calls.

41. The use of a predictive dialer is evidenced by the use of a prerecorded or artificial voice whose primary function is to deliver a message in a telephone call initiated by a dialing system without human intervention.

42. All of the telephone calls were initiated using software capable of predictive dialing.

43.   UPTAIN's dialing software has the capacity to store telephone numbers.

44.   UPTAIN's dialing software has the capacity to dial from a database of
      numbers.

45.   UPTAINs dialing software has the capacity to dial from a database of
      numbers at random or in sequential order.

46.   UPTAIN's dialing system has the capacity to dial from a database of
      telephone numbers without human intervention.

47.   UPTAIN's telephone calls to Plaintiff were initiated using an automatic
      telephone dialing system.

48.   As a member of ACA International, UPTAIN has received and has access to
      materials, such as fastfaxes and listservs, which put UPTAIN on notice of
      the existence of the TCPA and its obligations under the TCPA.

49.   When obtaining its dialing software or vendor, UPTAIN would have been
      provided information by the manufacturer or vendor regarding cellular
      telephone flagging or scrubbing and TCPA compliance.

50.   UPTAIN knew about the TCPA prior to making the calls to Plaintiff in this
      case.

51.   The telephone calls to Plaintiff's cellular telephone number were knowingly
      initiated using an automatic telephone dialing system.

52.   The telephone calls to Plaintiff's cellular telephone number were willfully

initiated using an automatic telephone dialing system.

53. The telephone calls to Plaintiff's cellular telephone number which used an artificial or prerecorded voice to deliver a message were knowingly initiated.

54. The telephone calls to Plaintiff's cellular telephone number which used an artificial or prerecorded voice to deliver a message were willfully initiated.

55. The telephone calls to Plaintiff's cellular telephone number were not initiated by accident or mistake.

56. It was the intent of UPTAIN to initiate the telephone calls to the cellular telephone number at issue.

57. The telephone calls were inconvenient to Plaintiff

58. The telephone calls were annoying and a nuisance to Plaintiff.

59. The telephone calls to Plaintiff invaded the privacy interests that the TCPA was intended to protect.

60. The telephone calls temporarily occupied Plaintiff's cellular telephone line preventing its use for other calls.

61. Plaintiff has complied with all conditions precedent to bring this action.

**CAUSES OF ACTION**

**COUNT I: FAIR DEBT COLLECTION PRACTICES ACT**

62. The acts of Defendant constitute violations of the Fair Debt Collection

Practices Act.

63.    Defendant communicated with a consumer in connection with the collection of an alleged debt at a place (i.e., her cellular telephone) which was known or which should be known to be inconvenient to the consumer, in violation of 15 U.S.C. § 1692c(a)(1);

64.    Defendant communicated directly with a consumer in connection with the collection of an alleged debt when the consumer was represented by an attorney with respect to such debt, and the Defendant had knowledge of, or could readily ascertain, such attorney's name and address, in violation of 15 U.S.C. § 1692c(a)(2).

65.    As a result of Defendant's actions, Plaintiff is entitled to an award of actual and statutory damages, as well as an award of costs and attorney fees.

## COUNT II: TELEPHONE CONSUMER PROTECTION ACT IMPROPER USE OF AUTOMATIC TELEPHONE DIALING SYSTEM

66.    The acts of Defendants constitute violations of the Telephone Consumer Protection Act.

67.    Defendants made telephone calls to Plaintiff's cellular telephone number using an automatic telephone system.

68.    Defendants' automatic telephone dialing system violations of the TCPA include, but are not limited to, the following:

69.     Making and/or initiating telephone calls using an automatic telephone

dialing to any telephone number assigned to a cellular telephone

service, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 CFR §

64.1200(a)(1)(iii).

70.     As a result of Defendants' actions, Plaintiff is entitled to an award of actual

damages or $500.00, whichever is greater, for each such violation and an

injunction prohibiting future conduct in violation of the TCPA.

71.     Defendants' violations were committed willfully and knowingly. Plaintiff

requests the court treble damages pursuant to 47 U.S.C. § 227(b)(3).

72.     Plaintiff requests that Defendants be enjoined from future TCPA violations.

## COUNT III: TELEPHONE CONSUMER PROTECTION ACT IMPROPER USE OF ARTIFICIAL OR PRERECORDED VOICE

73.     The acts of Defendants constitute violations of the Telephone Consumer

Protection Act.

74.     Defendants made calls to Plaintiff's cellular telephone number in which it

played prerecorded voice messages which interjected an artificial voice into

the prerecorded script to state the name of Plaintiff.

75.     Defendants' artificial and prerecorded voice violations of the TCPA include,

but are not limited to, the following:

76.     Making and/or initiating telephone calls using an artificial or

prerecorded voice to any telephone number assigned to a cellular telephone service, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 CFR § 64.1200(a)(1)(iii).

77.     As a result of Defendants' actions, Plaintiff is entitled to an award of actual damages or $500.00, whichever is greater, for each such violation and an injunction prohibiting future conduct in violation of the TCPA.

78.     Defendants' violations were committed willfully and knowingly. Plaintiff requests the court treble damages pursuant to 47 U.S.C. § 227(b)(3).

79.     Plaintiff requests that Defendants be enjoined from future TCPA violations.

## COUNT IV: BAD FAITH ATTORNEYS FEES

80.     Defendants have acted in bad faith, been stubbornly litigious and/or caused the Plaintiff unnecessary trouble and expense.  Plaintiff requests an award of the expenses of litigation, including a reasonable attorney's fee, pursuant to O.C.G.A. § 13-6-11.

## JURY TRIAL DEMAND

81.     Plaintiff herein demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

82.    Plaintiff hereby demands that the Defendant take affirmative steps to
preserve all recordings, data, emails, recordings, phone records, dialer
records, documents and all other tangible things that relate to the allegations
herein, Plaintiff, or the making of telephone calls, the events described
herein, any third party associated with any telephone call, campaign,
telemarketing, account, sale or file associated with plaintiff, and any account
or number or symbol relating to any of them.  These materials are very likely
relevant to the litigation of this claim.  If Defendant is aware of any third
party that has possession, custody or control of any such materials, Plaintiff
demands that Defendant request that such third party also take steps to
preserve the materials.  This demand shall not narrow the scope of any
independent document preservation duties of the defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of
herself and against Defendant, as follows:

A.    Actual and additional damages pursuant to 15 U.S.C. § 1692k;

B.    Compensatory damages in the liquidated amount provided by
47 U.S.C. 227(b)(3)(B);

C.    Treble damages pursuant to 47 U.S.C. § 227(b)(3);

D.   Injunctive relief 47 U.S.C. § 227(b)(3)(A) preventing future conduct by the defendants in violation of the TCPA;

E.   Attorney's fees and litigation expenses of suit pursuant to O.C.G.A. § 13-6-11 and 15 U.S.C. § 1692k; and

F.   Costs of this Action pursuant to Fed. R. Civ. P. 54; and

G.   Such further and additional relief as the court deems just and proper.

Respectfully submitted,

SKAAR & FEAGLE, LLP

by:   /s/ Justin T. Holcombe
      Justin T. Holcombe
      Georgia Bar No. 552100
      jholcombe@skaarandfeagle.com
      Kris Skaar
      Georgia Bar No. 649610
      kskaar@skaarandfeagle.com
      133 Mirramont Lake Drive
      Woodstock, GA  30189
      770 / 427-5600
      404 / 601-1855 fax

      James M. Feagle
      Georgia Bar No. 256916
      jfeagle@skaarandfeagle.com
      2374 Main Street
      Suite B
      Tucker, GA 30084
      404 / 373-1970
      404 / 601-1855 fax

      ATTORNEYS FOR PLAINTIFF

13